UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| Sunshine Stewart,<br><br>                Plaintiff,<br><br>—v—<br><br>Manhattan Yacht Club, Inc., Arabella, *in rem*, and Michael Szymanski,<br><br>                Defendants. | 16-CV-9764 (AJN)<br><br>MEMORANDUM<br>OPINION & ORDER |

ALISON J. NATHAN, United States District Judge:

This action arises from injuries Plaintiff Sunshine Stewart suffered as the result of a 2015 motor vehicle accident in the British Virgin Islands. Defendants Manhattan Yacht Club, *Arabella*, a 157-foot sailing yacht being sued *in rem*, and Michael Szymanski, jointly move to dismiss the action under the doctrine of *forum non conveniens*. Additionally, Szymanski moves with respect to the claim against him for the Court to either disclaim jurisdiction or to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For the following reasons, the Court DENIES the motions.

I. **Factual Background**

Sunshine Stewart ("Plaintiff" or "Stewart") is a United States citizen and resident of Maine who, in January 2015, was living and working on St. John in the U.S. Virgin Islands. First Amended Complaint ("FAC"), Dkt. No. 26, ¶ 1, 10. Manhattan Yacht Club ("MYC"), a corporation registered and operating in the State of New York, is the owner, operator, and is otherwise responsible for the ownership, operation and crewing for the *Arabella*. *Id.* ¶ 2. MYC

1

maintains and operates the *Arabella* in New York during the summer months, and in the U.S. and British Virgin Islands ("BVI") during the winter months. *Id.* ¶ 3. On or before January 16, 2015, Plaintiff was hired by the Captain of the *Arabella* as a "stewardess and tender operator," and her employment was approved by Michael Fortenbaugh, the Chief Executive Officer of MYC. *Id.* ¶ 10. Plaintiff immediately traveled to Tortola, BVI, boarded the vessel, and joined the crew. *Id.*

On January 27, 2015, Plaintiff was assigned the duty of obtaining provisions for the people aboard the *Arabella*. *Id.* ¶ 12. According to Plaintiff, the vessel "arranged for and selected Plaintiff's transportation with Potter's Taxi and Tours," and Plaintiff was provided with funds to purchase the provisions. *Id.* On her way back to the boat with the provisions, the taxi was involved in a car accident. Plaintiff believes that the taxi driver "acted negligently and carelessly in the use and operation of the taxi," causing or contributing to a collision with Defendant Michael Szymanski. *Id.* ¶ 13. The taxi driver drove the taxi onto an embankment causing the taxi to roll over, thereby causing "serious injuries and damages" to Plaintiff. *Id.* Mr. Szymanski, a resident of Buffalo on vacation in the BVI, was driving a car he rented in BVI, and, according to Plaintiff, also "negligently and carelessly operated and drove the [rental car]…so as to cause or contribute to a collision with the taxi that Plaintiff was a passenger in; thereby directly and proximately causing severe and debilitating injuries to Plaintiff." *Id.* ¶¶ 44, 46.

Elsewhere, in their papers and supporting declarations, the parties provide additional details relevant here. The accident was investigated by the BVI police department and an accident report was issued. Dkt. No. 21, Ex. 2. The taxi driver, Suraj Jadunath, is a BVI resident. *Id.* ¶ 5. There were two witnesses to the accident: Megan Larson, a passenger in Szymanski's car and an Oregon resident, *id.* & Memorandum in Opposition to Defendants' Motion to Dismiss

for *Forum Non Conveniens* ("FNC Opp."), Dkt. No. 49, at 12, and Sarah Wilkie, another crewmember and passenger in the taxi, a U.S. citizen whose last known address is in Spain. *Id.* & Declaration of Michael Fortenbaugh, Dkt. No. 40, ¶ 7. Plaintiff first sought medical treatment in the U.S. Virgin Islands and later in Maine; she did not receive treatment in New York. Declaration of Michael A. Walters, Dkt. No. 41, ¶¶ 6-9. Upon learning of Plaintiff's action, Szymanski submitted the claim to the BVI-based rental insurance company, Nagico, and demanded that they provide a defense. Declaration of James A. Duggan, Dkt. No. 35, Ex. 3. Nagico denied coverage, citing a provision of the rental agreement requiring the claim to be brought in the BVI for Nagico to provide coverage. *Id.*

In her amended complaint, Stewart brings four causes of action against Defendants Manhattan Yacht Club and *Arabella* for negligence, unseaworthiness, general maritime negligence, and for maintenance and care, pursuant to the Jones Act, 46 U.S.C. § 30101 *et seq.*, and under the General Maritime Laws. Stewart also pleads one claim against Defendant Michael Szymanski for common law negligence.

## II. Procedural Background

On December 19, 2016, Plaintiff commenced this action against Defendants Manhattan Yacht Club, Inc. ("MYC"), Michael Szymanski, and against the yacht named *Arabella* and its appurtenances, tackle, and equipment, all of which is owned and operated by MYC. Dkt. No. 1. On March 15, 2017, Defendant Michael Szymanski moved to dismiss the complaint for lack of proper venue under Federal Rule of Civil Procedure 12(b)(3) and for lack of subject matter jurisdiction. Dkt. No. 21. Pursuant to Rule 3.F of the Court's Individual Practices in Civil Cases, Plaintiff was granted leave to amend her complaint in light of Szymanski's motion to dismiss, Dkt. No. 22, and she did so on March 24, 2017, filing the operative First Amended Complaint.

3

Dkt. No. 26. In response to the filing of the new complaint, Szymanski chose to rely on his original motion to dismiss, while Defendants MYC and *Arabella* answered the complaint, additionally asserting a crossclaim against Szymanski. *See* Dkt. Nos. 33 & 38.

Before the Court resolved Szymanski's motion, however, all of the Defendants filed a joint motion to dismiss the action for *forum non conveniens*. Dkt. No. 39. Given that Szymanski's arguments and Plaintiff's responses were briefed in a piecemeal fashion, for the sake of clarity the Court administratively denied Szymanski's motion to dismiss and the "supplemental" motion to dismiss, had Szymanski re-file a comprehensive motion to dismiss containing all arguments for dismissal, and set a briefing schedule for responses to the pending motions. Dkt. No. 46. Accordingly, the motions were fully submitted on April 4, 2018, when, after the Court granted leave, Plaintiff filed her sur-reply. *See* Dkt. No. 65.

### III. Motion to Dismiss for *Forum Non Conveniens*

#### A. Legal Standard

"*[F]orum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (citation and internal quotation marks omitted). The "central purpose" of the inquiry is "to ensure that the trial is convenient." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Dismissal on these grounds should only be granted "when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft*, 454 U.S. at 241 (quoting *Koster v. Lumbermens Mut. Cas. Co.*,

4

330 U.S. 518, 524 (1947)) (alterations in original). The determination "is committed to the sound discretion of the trial court," *id.* at 257, and "may be overturned only when ... that discretion has been *clearly abused.*" *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001 (en banc) (emphasis in original) (quotation omitted). In deciding such a motion, the Court may look beyond the pleadings and consider affidavits or declarations from the parties. *Wenzel v. Marriott Int'l, Inc.*, No. 13-CV-8335 (AT), 2014 WL 6603414, at *2 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 629 F. App'x 122 (2d Cir. 2015); *see also Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009).

The Second Circuit has outlined a three-step process to guide district courts in applying their broad discretion over *forum non conveniens* determinations. *See Iragorri*, 274 F.3d at 73-74 (2d Cir. 2001). "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Norex*, 416 F.3d at 153 (internal citations omitted). "[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal." *Iragorri*, 274 F.3d at 74. Indeed, unless the balance is strongly in the defendant's favor, the plaintiff's choice of forum "should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The moving party "bears the burden of proof on all elements of the motion." *Bank of Credit Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

B. Analysis

1. **Proper Degree of Deference Applicable to Plaintiff's Choice of Forum**

The Supreme Court has instructed that a plaintiff's choice of her home forum should be given great deference. *See Iragorri*, 274 F.3d at 71. Plaintiff, a U.S. citizen residing in Maine, should thus generally be accorded great deference in her choice, even though she does not live in New York. *Id.* at 73 ("It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district."); *accord Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000) (stating that the "home forum" of an American citizen is any United States court). The essential principle is: "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Iragorri*, 274 F.3d at 71-72.

Here, the Defendants argue that Plaintiff's choice of the forum is entitled to little deference because "all of the operative facts in this action relate to activities in the BVI." Memorandum of Law in Support of Defendants' Motion to Dismiss for *Forum Non Conveniens* ("FNC Mot."), Dkt. No. 43, at 5. They assert that the operative facts relate to a car accident that occurred in the BVI between a BVI resident and a BVI rental car insured by a BVI insurer, the result of which was investigated by the BVI police and inspected by BVI mechanics. *Id.* at 6.

Plaintiff argues that she sued in New York because MYC, *Arabella*, and Szymanski all reside in New York and because there is "no apparent basis for jurisdiction and venue" in Maine. FNC Opp. at 5, n.1. She further alleges that the "primary purpose of her action" is to enforce her rights as a seaman under the Jones Act, which provides remedies for injured seamen against their employer. *Id.* at 7-8. Four of her five claims are brought against the New York-based MYC and *Arabella* under the Jones Act, and relate in part to her employer's alleged failure to pay her medical expenses in full. Plaintiff also asserts that the BVI courts would not recognize her

6

claims under the Jones Act, *id.* at 10-11 (citing Declaration of Nikitas John Olympitis, Dkt. No. 51, ¶¶ 10-15), although this is disputed. *See* Reply Memorandum of Law in Support of Defendants' Motion to Dismiss for *Forum Non Conveniens* ("Reply"), Dkt. No. 58, at 5 (citing Second Declaration of Andrew Thorp, Dkt. No. 60, ¶¶ 3-4).

Defendants rely on a comparison to two recent cases, *Wenzel* and *Muraco*, but the differences are instructive. In *Wenzel*, although the plaintiffs were New York residents, the district court concluded that because "the operative facts of this action" occurred in Aruba, the deference to the plaintiff's forum choice is diminished. 2014 WL 6603414, at *3. However, in *Wenzel*, the premises liability action for plaintiffs' injuries was brought against a hotel operated, maintained, and managed by two Aruban companies. *Id.* By contrast, Stewart brings all of her claims against New York-based defendants. Similarly, in *Muraco*, the New York-based plaintiff was injured at a hotel in St. Lucia, and brought a premises liability suit against Jamaican and St. Lucian defendants. *Muraco v. Sandals Resorts Int'l*, No. 14-CV-4896 (MKB), 2015 WL 9462103, at *1, 6 (E.D.N.Y. Dec. 28, 2015). Thus, while it is undoubtedly true here that, like in *Wenzel* and *Muraco*, some of the operative facts occurred outside of the country, the allegations here also center on the role that New York-based MYC played in her injuries and on MYC's actions since the incident.[1]

In short, although many of the operative facts relate to a car accident that occurred in the BVI, there is no indication of forum shopping or an improper motive on the part of the Plaintiff

---

[1] There are other features of *Wenzel* and *Muraco* that distinguish them from Plaintiff's action here and that led those courts to dismiss for *forum non conveniens*, but the Court discusses them within the third prong of the Circuit's test for the sake of clarity. Additionally, it merits noting that in *Trotter*, discussed below, the defendants were also based in the BVI and Puerto Rico. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 438 (3d Cir. 2017)

such that her choice of her home forum should not be accorded the considerable deference the law requires.

### 2. Adequacy of Alternative Forum

There is little question that the BVI would be an adequate alternative forum, and Plaintiff appears to concede its adequacy. As Defendants observe, several courts considering similar claims arising in the BVI have held as such. *See, e.g., Trotter v. 7R Holdings, LLC*, No. 14-CV-99, 2016 WL 1271025 (D.V.I. Mar. 30, 2016), *aff'd*, 873 F.3d 435 (3d Cir. 2017); *Hoffman v. Rosewood Hotels & Resorts, LLC*, No. 12-CV-86, 2013 WL 3974098, at *4 (D.V.I. July 31, 2013); *Saud v. PIA Invs. Ltd.*, No. 07-CV-5603 (NRB), 2007 WL 4457441, at *3 (S.D.N.Y. Dec. 14, 2007). Defendants, supported by a declaration from Andrew M. Thorp, an attorney in the BVI, argues that under BVI law, Stewart would be able to advance claims against MYC, Szymanski, and the taxi company. Thorp Decl. ¶¶ 16, 31. The Defendants also note that they would consent to jurisdiction in the BVI and would waive formal service of process to facilitate litigation there. FNC Mot. at 8, n.3.

Additionally, as noted by the district court in *Trotter* – which considered claims brought under the Jones Act by a chef who sustained an injury disembarking from the boat she worked on – even if the law in the alternative forum were less favorable to the plaintiff, that "does not make a foreign court inadequate." 2016 WL 1271025, at *3 (citing *Piper Aircraft*, 454 U.S. at 247); *accord Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir. 1980) (holding that inadequacy of alternative forum was not established by prospect of lesser recovery).

Yet, while BVI would provide an adequate alternative forum in this case, "a defendant does not carry the day simply by showing the existence of an adequate alternative forum. The

action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri*, 274 F.3d at 74-75.

### 3. Balance of the Private and Public Interests

The key here, as with many *forum non conveniens* motions, is whether the balance of private and public interest factors tips enough in favor of the movants such that plaintiff's choice of forum ought to be disturbed. *See Iragorri*, 274 F.3d at 75 (stating that the court "must balance the greater convenience to the defendant ... against any greater inconvenience to the plaintiff"). The private factors include: (1) ease of access to witnesses and evidence; (2) the possibility of viewing the incident location; and (3) "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 73-74. The public interest factors include: (1) the level of congestion of the domestic court's calendar; (2) the desire to resolve local disputes locally, and (3) the relative interests of the domestic and foreign forum. *Gilbert*, 330 U.S. at 508-09.

#### a. Private Interests

The first set of factors, the private interest factors, focus on "the convenience of the litigants." *Iragorri*, 274 F.3d at 73. Chief among these considerations is the location of the witnesses and evidence that would be presented at trial, although issues of convenience are somewhat less compelling than they once were. *See, e.g., Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co. Ltd.*, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005) ("In this day and age of rapid transportation and instant communications, the convenience of immediate physical proximity to documents, testimony, and other proof has become of less consequence to a *forum non conveniens* analysis ...").

9

The Defendants assert that most of the key witnesses are in the BVI and only Szymanski resides in New York. FNC Mot. at 9. The taxi driver, police department, taxi company, insurance companies, and mechanics are all located in the BVI. *Id.* at 9-10. They further argue that these witnesses and any photographs or documents they may have are beyond this Court's jurisdiction, and that the need for live testimony from the taxi driver is paramount. *Id.* at 10. Additionally, aside from Szymanski, none of the other witnesses are located in New York, including Larson, Wilkie, and Stewart's physicians. *Id.*

Plaintiff counters, however, by noting that Michael Fortenbaugh, who directed the work-related activity to led to her injury, lives and works in New York City, that MYC's business records are located in New York, including evidence related to Stewart's employment, and communications between MYC and its insurer. Opp. at 11-12. Moreover, most of the key witnesses live in the United States, not the BVI. Stewart's treating physicians are US-based. MYC's insurer is located in New Jersey, the Chef and First Mate of the *Arabella* both live in Florida, Szymanski lives in New York, Larson lives in Oregon, and Wilkie has agreed to return to the U.S. to testify at deposition and trial. *Id.* at 12; *see* Declaration of Sunshine Stewart, Dkt. No. 50, ¶ 20. In fact, the only witness to the vehicle collision who allegedly does not live within the jurisdiction of this Court, the taxi driver, may either voluntarily appear for a deposition or at trial, or the parties could use the Hague Convention process, of which the BVI is a signatory country, to compel his appearance. *Id.* at 12-13 (citing Olympitis Decl. ¶¶ 39-43); *accord City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 795 (S.D.N.Y. 2017) (Nathan, J.) (noting that "the Court of Appeals has recognized that '[d]espite the preference for live testimony' alternative arrangements, such as 'videotaped depositions, obtained through letters rogatory,' can still 'afford the jury an opportunity to assess the credibility' of absent witnesses" (citing *DiRienzo v.*

*Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002))). Moreover, the vehicles are no longer available for inspection, the police report suggests no issues that would require a viewing of the scene, and there exist photos of the accident scene and the vehicles for use. *Id.* at 13.

Ultimately, witnesses and evidence in this case exist in the United States (both within and outside New York) and in the BVI, and the "precise issues that are likely to be actually tried," *Iragorri*, 274 F.3d at 74, will likely require the testimony of witnesses and presentation of evidence present in both fora. A case of this nature, even if stemming from a car accident in the BVI, is different from the premises liability cases upon which Defendants rely. In *Wenzel*, the court stated that "[t]he premises, equipment, employees, and other sources of proof relevant to establishing liability are, with the exception of the Plaintiffs themselves, located entirely in Aruba." 2014 WL 6603414, at *6. Similarly, in *Muraco*, the court noted that the negligence claim would require an examination of the resort employees charged with maintaining the relevant premises, expert testimony regarding the relevant duty of care in St. Lucia, and a viewing of the premises located in St. Lucia. 2015 WL 9462103, at *9-10. Here, part of the proof focuses on the duties and obligations of Plaintiff's New York-based employer, and part of the evidence and witnesses lies within the United States. Accordingly, given that in some respects *both* New York and the BVI are inconvenient, the location of witnesses and evidence does not sufficiently tip toward the BVI to warrant dismissal.

The other private interest factors are less crucial to the balancing analysis here, and do not clearly change the balance of interests. Plaintiff complains that she retained attorneys who are handling this case under a contingency fee agreement, but that BVI does not permit that, and she would be required to hire attorneys on an hourly basis. Opp. at 14-15. While the financial burden this may place on the plaintiff is not insubstantial, Defendants correctly note that it is also

somewhat speculative, as Stewart has not provided evidence regarding her financial situation, and other mechanisms are still available to aid Stewart, including third party litigation funding. *See* Reply at 7-8. Similarly, on the other side, Defendant Szymanski affirms that unless the claim against him is adjudicated in the BVI, the insurance company providing coverage for his rental car will not cover the costs of his defense. FNC Mot. at 12 (citing Duggan Decl. ¶¶ 5-6). While the burden Szymanski potentially faces is consequential, he offers no authority to suggest that his decision to procure insurance coverage with such a restriction of the insurer's duty to defend should weigh heavily into the Court's decision about whether to dismiss an action properly brought in this jurisdiction. Finally, MYC claims that since it will have to litigate negligence claims against Szymanski, the taxi driver, and the taxi company for contribution or indemnity – claims which are currently stayed in the BVI court pending resolution here – it would be more efficient to adjudicate all of the relevant claims in one forum, the BVI. FNC Mot. at 11; Declaration of Edward P. Flood, Dkt. No. 59, Ex. 1. Yet, however efficient that might be for MYC, no authority is provided for the proposition that its subsequent desire to bring an indemnity claim might be sufficient to overcome the plaintiff's choice of forum. Moreover, as Stewart notes in her sur-reply, because the defendants in the pending BVI action will only increase the scope of their potential liability to MYC for indemnity by not cooperating in this action, and because the taxi company and driver have the incentive of assisting MYC in shifting liability to Szymanski, there is even less reason to believe they would not cooperate with an action in this forum. *See* Dkt. No. 65 at 2.

In sum, the balance of the private interests does not cut strongly in either side's favor.

### b. Public Interests

The parties dispute the relative interests New York and the BVI have in adjudicating this dispute. In accordance with their arguments above, the movants characterize the dispute as focusing on a car accident in the BVI, and the dispute as not "local" to New York. By contrast, relying on the court in *Muraco*, movants note the high level of the BVI's interest because "the action implicates the tourism industry and that industry is of importance to the foreign forum." 2015 WL 9462103, at *11. Unsurprisingly, construing the action as broader than a car accident, Plaintiff presents the case as "a 'local' dispute between a U.S. citizen and her U.S. maritime employer regarding the employer's obligations under U.S. maritime laws." Opp. at 23.

Again, the interests cut in both directions. The BVI undoubtedly has an interest in adjudicating disputes regarding the safety of its roads, citizens, and tourists, and the potential negligence of its taxi drivers. However, New York also has an interest in ensuring that a local employer does not breach its duty to maintain a safe workplace.

Given that Plaintiff's claim against Szymanski lies in diversity, the movants also focus on New York's choice-of-law analysis and how the result would be that the Court would have to apply BVI's traffic laws and regulations. FNC Mot. at 14. If the action were solely against Szymanski, this factor would weigh more heavily in favor of dismissal, but the Supreme Court has made it clear that courts considering *forum non conveniens* motions need not conduct elaborate choice-of-law analysis because the doctrine is "designed in part to help courts avoid conducting complex exercises in comparative law." *See Piper Aircraft*, 454 U.S. at 251; *Gazis v. John S. Latsis (TJSA) Inc.*, 729 F. Supp. 979, 985 (S.D.N.Y. 1990) ("a district court may dismiss a case on *forum non conveniens* grounds without first making a choice of law determination").

Finally, while there is absolutely no doubt, and Plaintiff does not dispute, that the Southern District of New York is among the busiest districts in the nation, the Court's need to

guard its docket does not outweigh the deference owed Stewart to choose her forum to adjudicate her claims against her employer.

In sum, the public interest factors slightly favor the Defendants.

* * *

While the private interest factors do not weigh strongly in either direction, and the public interest factors slightly favor the Defendants, the Court considers all of the factors in total, as "the doctrine's strength derives from its flexibility and each case turns on its own facts." *DiRienzo*, 294 F.3d at 29. Ultimately, the balance is not *strongly* in the defendant's favor, and in light of the equities running both ways, the plaintiff's choice of forum ought not be disturbed. *Gilbert*, 330 U.S. at 508. The Court thus denies the Defendants' joint motion to dismiss for *forum non conveniens*.

## III. Defendant Szymanski's Other Motions

Apart from the arguments Mr. Szymanski makes in joining MYC and *Arabella*'s motion to dismiss for *forum non conveniens*, Szymanski also urges this Court to decline jurisdiction over Plaintiff's cause of action against him, or, in the alternative, to dismiss him pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. The Court addresses Szymanski's arguments in turn.

First, Szymanski's arguments regarding admiralty jurisdiction are wholly inapposite, as the claims against Szymanski are based on diversity jurisdiction. *See* Memorandum of Law in Support of Michael Szymanski's Motion to Dismiss Complaint ("Szymanski Mem."), Dkt. No. 48, at 2-3; Plaintiff's Memorandum in Opposition to Defendant Michael Szymanski's Motion to Dismiss ("Szymanski Opp."), Dkt. No. 53, at 3, 8.

Second, Szymanski argues that the Court should not extend supplemental jurisdiction to Szymanski's claims, because there is no "common nucleus of operative fact" in this case. Szymanski Mem. at 3 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)). However, because there is an independent basis for federal jurisdiction – diversity jurisdiction – the Court need not extend supplemental jurisdiction. Moreover, as discussed above, some of the Plaintiff's claims under the Jones Act involve the same issues of negligence underlying the car accident that are at the core of Plaintiff's claim against Szymanski, such that "[s]he would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725.

Third, and for the same reasons that the Court has jurisdiction over Szymanski, Szymanski's argument that venue is not proper in the Southern District of New York fails. Szymanski Mem. at 4-5. Under the doctrine of pendent venue, "a federal court may *in its discretion* hear pendent claims which arise out of the same nucleus of operative facts as a property venued federal claim, even if venue of the pendent claim otherwise would not lie." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (internal quotation marks and citation omitted) (emphasis in original); *see also* 14D Fed. Prac. & Proc. Juris. § 3808 (4th ed.). The doctrine helps alleviate potential problems of inefficiency and piecemeal litigation that the venue rules could otherwise generate. *See Hsin Ten Enterp. USA, Inc. v. Clark Enterps.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000). Venue is proper in the Southern District for MYC and *Arabella*, *see* 28 U.S.C. § 1391(b)(1), which the Court deems the primary claim. *See id.* at 462-63 (describing how some courts determine which of the two federal claims is the "primary" claim and apply the venue statute applicable to that claim). Accordingly, the Court exercises its discretion under the pendent venue doctrine to hear Stewart's secondary claim against Szymanski as well.

Accordingly, Szymanski's motion to dismiss is denied.

## V. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are all DENIED. This resolves Dkt. Nos. 39 and 54. The Court will schedule an initial pretrial conference by separate Order.

SO ORDERED.

Dated: July _____, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge